UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **RUSTY J. HEBERT** | **CASE NO: 13-CV-3237** |
| **VERSUS** | **MAGISTRATE JUDGE HILL** |
| **DARLENE LANDRY HEBERT, ET AL** | **BY CONSENT OF THE PARTIES** |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the Motion for Summary Judgment filed by the Lafayette Parish Consolidated Government ("LCG") and Detective Walter Allred ("Allred"), on November 25, 2014.  [rec. doc. 14].   Plaintiff, Rusty J. Hebert ("Rusty"), filed opposition on December 16, 2014.  [rec. doc. 17].  Defendants filed a reply on December 23, 2014.  [rec. doc. 22].

Oral argument was held January 14, 2015, after which I took the motion under advisement.

For the following reasons, the Motion for Summary Judgment is **GRANTED**, and all federal claims filed by plaintiff are **DISMISSED WITH PREJUDICE;** all state law claims are **REMANDED** to the 15th Judicial District Court, Parish of Lafayette.

## Background

Rusty Hebert filed this lawsuit against LCG and Allred asserting federal claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments, and state law tort

claims under LA. CIV. CODE article 2315.[1]

Rusty and Darlene Landry Hebert ("Darlene") were married on June 22, 1998. During the marriage, they acquired a home located at 604 Rosedown Boulevard in Lafayette, Louisiana. [rec. doc. 14, Deposition of Darlene Landry Hebert ("Darlene Hebert depo."), p. 7]. In March of 2008, Rusty and Darlene separated, and Rusty moved out of the house. [rec. doc. 14, Deposition of Rusty Hebert ("Rusty Hebert depo."), p. 18; Darlene Hebert depo., p. 6].

Darlene continued to reside in the house after the separation. [Darlene Hebert depo., p. 7]. In June, 2008, she changed the locks after Rusty was served with divorce papers. [Darlene Hebert depo., p. 7]. The Heberts' divorce was finalized on February 25, 2009. [Darlene Hebert depo., p. 11].

On March 5, 2009, Rusty, knowing that Darlene would be at work, went to the house at about 1:00 or 2:00 p.m. [Rusty Hebert depo., pp. 27, 35-37]. To get into the house, he broke a window. [Rusty Hebert depo., pp. 34, 36, 80]. While inside, he shattered the glass on the couple's wedding picture and destroyed other items. [Rusty Hebert depo., pp. 37-38]. He also wrote some "ugly" letters to Darlene, which he left for her. [Rusty Hebert depo., pp. 38, 83-84].

Rusty then took a nap and watched television. [Rusty Hebert depo., p. 39]. He exited the house through the broken back window. [Rusty Hebert depo., p. 40].

---

[1] Defendants, State Farm Fire and Casualty Company and Darlene Hebert were dismissed from the lawsuit. [rec. doc. 1, Notice of Removal, ¶ 3].

When Darlene arrived home, at about 5:30 p.m., she discovered glass all over the floor, crumbled and ripped up pictures, and the letters from Rusty. [Darlene Hebert depo., p. 8].  She called the police, reporting that someone, whom she suspected was her ex-husband, had broken into her home.  [Darlene Hebert depo. p. 9].  At all relevant times, Darlene was employed as a secretary for the Criminal Investigation Division of the Lafayette City Police Department. [Darlene Hebert depo., p. 6].

Shortly afterwards, patrol officers Tom Mercier and Chris Waddlington with the Lafayette City Police arrived at Darlene's house and took a statement from her.  [Darlene Hebert depo., p. 9].  While the police officers were there, Rusty called Darlene's cell phone, but she did not answer.  [Rusty Hebert depo., p. 42].

Detective Walter Allred was assigned to the case. [Darlene Hebert depo., p.12].  After the incident, Allred talked to Darlene and a neighbor, Richard Boudreaux ("Boudreaux").  [rec. doc. 14, Exhibit D, Deposition of Walter Allred ("Allred depo."), pp. 25, 27].  Boudreaux gave a statement in which he reported seeing Rusty entering the house.  [Allred depo., p. 41].

At approximately 6:15 p.m. that evening, Allred contacted Rusty.  [Allred depo., p. 25] When Allred asked Rusty about the incident, Rusty became "irate and started yelling."  [Allred depo., p., 28; Rusty Hebert depo., p. 44].  Allred instructed Rusty to go to the police station to give a statement.  [Rusty Hebert depo., pp. 47-48; Allred depo., p. 28].

On the evening of March 5, 2009, Allred obtained an arrest warrant for Rusty which was signed by state Judge Thomas Frederick.  [rec. doc. 14, Exhibit D; Allred depo., pp. 39-

40]. Afterwards, the local TV stations and other media outlets ran a story showing Rusty's picture and stating that he was wanted for breaking into his former wife's residence. [rec. doc. 14, Exhibit E; Rusty Hebert depo., pp. 49-51]. A couple of days later, Rusty turned himself in to the police. [Rusty Hebert depo., pp. 49, 51, 59].

A bill of information was filed on June 11, 2009, charging Rusty with unlawful entry into an inhabited dwelling in violation of LA. REV. STAT. § 14:62.3. On October 5, 2009, the District Attorney formally dismissed the charge.

On January 15, 2010, Hebert filed a Petition for Damages in the 15th Judicial District Court, Parish of Lafayette, asserting claims for malicious prosecution, libel and defamation against LCG and Darlene. On April 18, 2011, Rusty filed a First Supplemental and Amending Petition in the state court proceeding naming Allred and State Farm Fire and Casualty Company as defendants. On November 12, 2013, Rusty filed a Second Supplemental and Amending Petition for Damages, in which he asserted a cause of action under 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments, and state law tort claims under LA. CIV. CODE article 2315 for defamation, invasion of privacy and holding Rusty in a false light.

On December 13, 2013, defendants, LCG and Allred, removed the action to this Court, asserting federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. On November 25, 2014, defendants filed the instant Motion for Summary Judgment, on the grounds of qualified immunity. [rec. doc. 14].

## **Summary Judgment Standard**

Fed. R. Civ. Proc. 56(a) provides that a motion for summary judgment shall be granted if the pleadings, depositions, discovery responses, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. *International Association of Machinists and Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Courts consider the evidence in the light most favorable to the nonmovant, but the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial. *Id*. (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Id*. (*citing Celotex Corp*., 477 U.S. at 322, 106 S.Ct. 2458.)).

## Law and Analysis

### *Civil Rights Claim*

Defendants argue that because Rusty's arrest was supported by probable cause, his 1983 claim for false arrest under the Fourth and Fourteenth Amendments should be dismissed. Alternatively, Allred asserts that, to the extent he has been sued in his individual capacity, he is entitled to qualified immunity because at least arguable probable cause existed for his arrest.

Defendants further argue that, because Rusty cannot demonstrate that a constitutional violation occurred, the *Monell*[2] claims against LCG and the official capacity claims against Allred should likewise be dismissed.

Section 1983 provides a cause of action against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's Constitutional rights. 42 U.S.C. § 1983. To state a section 1983 claim, a plaintiff must: (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S.Ct. 1935 (2014).

To ultimately prevail on his section 1983 false arrest/false imprisonment claim, Rusty must show that Allred did not have probable cause to arrest him. *Haggerty v. Texas Southern University*, 391 F.3d 653, 655-56 (5th Cir. 2004) (*citing Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest . . . and false imprisonment . . .

---

[2]*Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)

require a showing of no probable cause.").

Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id*. at 756 (*citing Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation and citation omitted)). Therefore, Allred is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which Allred was then aware, there was a fair probability that Rusty had committed, or was committing, an offense. *Id*. (*citing United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (explaining that probable cause's "fair probability" requires more than a bare suspicion but less than a preponderance of evidence)); *Canady v. Prator*, 2015 WL 507883, at *5 (W.D. La. Feb. 6, 2015) (James, J).

"Even law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity." *Haggerty*, 391 F.3d at 656 (*quoting Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (emphasis added) (internal quotation and citation omitted)); *see also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987) ("it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable.").

In sum, Rusty "must clear a significant hurdle to defeat [Allred's] qualified immunity." *Id*. (*quoting Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)). "[T]here must not even arguably be probable cause for the . . . arrest for immunity to be lost." *Id*. (*quoting Brown*, at 190).

Here, defendants have submitted evidence establishing probable cause for Allred to arrest Rusty. First, Rusty broke a window to get into the house in which Darlene had been living alone for eleven months since their separation. He went to the house at a time that he knew his ex-wife would be at work. His neighbor observed Rusty entering the house through a broken window.

Additionally, when Darlene arrived home, she saw broken glass all over the floor, crumbled and ripped up photographs, and angry letters from her ex-husband. She called the police and described what she had found. When Allred called Rusty after the incident, Hebert became "irate and started yelling", giving Allred further cause to believe that Rusty had committed a crime.

Allred asserts that he is entitled to qualified immunity. Qualified immunity protects public officers from suit if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Wilson v. Louisiana*, 2014 WL 1788283, at \*5 (W.D. La. May 5, 2014) (Walter, J). "Although nominally an affirmative defense, the plaintiff

8

has the burden to negate the defense once properly raised." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (*quoting Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).

Allred is entitled to qualified immunity on summary judgment unless (1) Rusty has "adduced sufficient evidence to raise a genuine [dispute] of material fact suggesting [the officer's] conduct violated an actual constitutional right," and (2) the officer's "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Poole*, 691 F.3d at 627.

Here, I find that Rusty has failed to adduce sufficient evidence to raise a genuine issue of material fact as to Allred's alleged violation of any constitutional right. The evidence shows that Allred acted reasonably given the deposition testimony of Rusty, Darlene and Allred. This is especially true where, as here, aspects of that testimony were corroborated by the physical evidence of the broken glass, damaged items, and irate letters left behind by Rusty, as well as the eye witness statement from the neighbor observing Rusty entering the house through a broken window.

Rusty argues that his arrest on the warrant issued at the request of Detective Allred was without probable cause and done with malice. Specifically, the plaintiff argues that although he and his wife were divorced, that he maintained his community property interest in the house. He further argues that his entry into the house was not illegal because he still had a legal right to the property.

Allred was told by Darlene that she was entitled to the exclusive use of the house. Darlene exhibited what, apparently, was a proposed final judgment of the court to that effect. Allred, noting that the proposed judgment was not signed, called this to Darlene's attention. He was nevertheless assured by Darlene that the judgment had been signed. The fact that Rusty broke a window to gain entry to the house further supported Darlene's assertion that she had the exclusive use of the house.

Darlene also told Allred that Rusty appeared depressed in light of his father's then recent death and the recent divorce. Darlene told Allred that Rusty had removed a gun from the residence. When Allred contacted Rusty by telephone, Rusty became rude and uncooperative. Furthermore, Rusty refused to come to the police station to give a formal statement. Thereafter, Rusty sought the arrest warrant.

Essentially, Rusty complains that Allred did not do a thorough investigation and instead precipitously obtained a warrant for Rusty's arrest. The Court agrees that Allred's investigation was not complete. However, that is not the issue. At the time that Allred obtained the arrest warrant, he had probable cause to arrest. At that point he knew that there had been a break-in at the house in which Darlene lived alone. He knew that the entry to the home was gained by breaking a window. He was told by Darlene, who occupied the home alone, that she had the exclusive right to inhabit the home. Allred was shown a proposed judgment which supported the statement made to him by Darlene. Rusty became belligerent during the telephone call with Allred and apparently hung up the telephone. Rusty refused to come to the police station and

make a formal statement. Allred was told by Darlene, who to that point had apparently provided honest information, that Rusty was potentially dangerous and armed with a gun.

Under the circumstances, the Court holds that Allred had probable cause to arrest Rusty. Since probable cause for the arrest existed, whether or not Allred had a duty to fully inform the judge who issued the arrest warrant of the exact particulars of his investigation is irrelevant.[3] [4]

Accordingly, I find that Detective Allred is entitled to qualified immunity.

### *Civil Rights Claim against LCG*

Rusty has also asserted a claim against LCG. In a 1983 action, municipalities and other local governing bodies cannot be held liable under a theory of *respondeat superior*; rather, liability must be based upon a municipality's official or unofficial policy, custom or procedure which causes a deprivation of plaintiff's constitutional rights. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. A supervisory official may be held liable only if: (i) he affirmatively participates

---

[3] Rusty alleges that Allred acted with malice in obtaining the arrest warrant. Malice has not been shown in this case. In any event, the officer's subjective state of mind generally has no bearing on whether he is entitled to qualified immunity. Qualified immunity turns on objective reasonableness. *Thompson v. Upshur County Texas*, 245 F.3d 447 (5th Cir. 2001), *and cases cited therein.*

[4] Even if probable cause for Rusty's arrest did not exist, Allred is still entitled to qualified immunity so long as at least "arguable probable cause" exists. The Fifth Circuit has said:

> A plaintiff must clear a significant hurdle to defeat qualified immunity. There must not even "arguably" be probable cause for the . . . arrest for immunity to be lost. That is, if a reasonable officer *could have concluded* that there was probable cause upon the facts then available to him, qualified immunity will apply. (emphasis added)

*Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001).

There can be no real doubt that a reasonable officer with Allred's knowledge of the facts at the time he obtained the arrest warrant, at the very least, "could have concluded" that probable cause to arrest existed.

in acts that cause constitutional deprivation; or (ii) implements unconstitutional policies that causally result in plaintiff's injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

Here, the there are no allegations pled that LCG had a policy, custom or procedure which caused a deprivation of Rusty's constitutional rights causally resulting in his injury. Further, this Court has determined that no constitutional violation occurred. As plaintiff has failed to allege any involvement by LCG in the incident at issue, summary judgment is proper.

Rusty's claim against Allred in his official capacity is the same as a claim against LCG. Accordingly, Rusty's claim against Allred in his official capacity is also dismissed.

### *State Tort Law Claims*

Rusty also asserts state tort law claims under LA. CIV. CODE articles 2315 for malicious prosecution, defamation and false light invasion of privacy.

The decision to exercise or decline supplemental jurisdiction over the state law claims is entirely within the discretion of this Court. *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). In making this decision, the Court must consider and weigh both the statutory provisions of 28 U.S.C. § 1367(c) and the values of judicial economy, convenience, fairness and comity. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350–51, 108 S.Ct. 614, 619 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The general rule of this Circuit is "to dismiss state claims when the federal claims to which they are pendent have been dismissed." *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992).

Generally, this Court remands state law claims when the federal claims have been dismissed. The Court will do so here.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that the Motion for Summary Judgment filed by LCG and Allred [rec. doc. 14] is **GRANTED**, and that all federal claims asserted by plaintiff are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that all state law claims are remanded to the 15th Judicial District Court, Parish of Lafayette.

Signed February 26, 2015, at Lafayette, Louisiana.

*C. Michael Hill*

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE